Filed 10/29/15

**CERTIFIED FOR PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>

**In re AURORA P. et al., Persons Coming Under the Juvenile Court Law.**

**ALAMEDA COUNTY SOCIAL SERVICES AGENCY,**

    **Plaintiff and Respondent,**

**v.**

**AURORA P., a Minor, et al.,**

    **Appellants.**

</td><td>

**A143211**

**(Alameda County Super. Ct. Nos. HJ10015424, HJ10015425, HJ10015426, HJ10015427, HJ10015428)**

</td></tr>
</table>

Welfare and Institutions Code section 364[1] governs status review hearings for dependent juveniles who remain in the physical custody of their parents or guardians. Subdivision (c) of that section (section 364(c)) provides that the juvenile court "shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." Thus, when the social services agency opposes termination of dependency jurisdiction, it clearly bears the burden of proof to show the existence of the

---

[*] Pursuant to California Rules of Court, rule 8.1110(b), part IV of this opinion is not certified for publication.

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

conditions section 364(c) specifies must be proven to support retention of dependency jurisdiction.

In this case, however, the social services agency took the opposite position and recommended dependency jurisdiction be terminated. Counsel for the dependent children (Minors) opposed the recommendation. After the juvenile court terminated jurisdiction and dismissed the dependency, Minors appealed.

Minors pointed out that no published case has decided what standard of review should apply where the social services agency recommends termination of dependency jurisdiction and the dependent child or children oppose the recommendation. Faced with this dearth of authority, we asked the parties for supplemental briefing on the issue. As we explain, we agree with the parties that the standard of review depends upon which party bore the burden of proof in the juvenile court. We hold that because Minors were the parties opposing termination of dependency jurisdiction, they bore the burden of establishing by a preponderance of the evidence that conditions justifying initial assumption of dependency jurisdiction either still existed or were likely to exist if supervision were withdrawn. Since Minors bore the burden of proof below and failed to meet it, we apply well-established rules of appellate review and conclude that to prevail on appeal, Minors must show the evidence compels a finding in their favor as a matter of law.

In the published portion of our opinion, we first address the questions of allocation of the burden of proof and standard of review. We then also hold the juvenile court is not required to make an express finding on a parent's participation in his or her court ordered treatment plan. In the unpublished portion of our opinion, we hold Minors have failed to show the juvenile court did not consider their best interests.

T.M. (Mother) has three daughters and two sons (collectively Minors) who are the subjects of this dependency proceeding, R.P. is the father of the two oldest siblings, and E.L. is the father of the three youngest.

*Petition, Detention, and Disposition*

On August 24, 2010, the Alameda County Social Services Agency (the Agency) filed a petition under section 300, subdivisions (b) and (g) alleging Mother had fractured her son's wrist and that E.L. had hit, slapped, pinched, and punched one of Mother's daughters as a form of discipline. The petition further alleged E.L. had sexually abused another daughter and spanked her in such a way that marks resulted. The Agency filed an amended petition on September 7, 2010, adding counts under subdivisions (g) and (j) of section 300. At the detention hearing on August 26, 2010, the juvenile court found removal was necessary and temporarily placed Minors in the Agency's care.

The Agency's jurisdiction/disposition report stated Minors were placed together in Sacramento, while the parents resided in Livermore. The report recommended family reunification services be provided to Minors, Mother, and E.L. but not to R.P., since his whereabouts were unknown. The parents agreed with the recommendation and were willing to engage in services. At the conclusion of the jurisdiction and disposition hearing on September 24, 2010, the court found the amended petition true and adopted the Agency's recommendations.

*Out-of-Home Status Review Hearings*

Between April 2011 and March 2012, the juvenile court conducted four status review hearings. At the six-month status review hearing, Minors were placed in three different foster homes, but the Agency stated there was a substantial probability they

---

[2] Because the issues on appeal are narrow in scope, we have abbreviated our statement of the facts of this very lengthy dependency proceeding. (See *In re Holly B.* (2009) 172 Cal.App.4th 1261, 1263.) Additional facts relevant to particular issues raised are included in the discussion section of this opinion.

would be returned to Mother because she had made significant progress resolving the problems that led to removal.

During the entire status review period, Mother received reunification services, and the Agency reported she was actively engaged, was in compliance with her case plan, and was making positive strides towards reunification with her children.[3]  For the 12-month status review hearing, it recommended that Mother's oldest and youngest daughters be returned home with family maintenance services and that the family be gradually reunified.  The juvenile court agreed, and as Mother continued to progress over the next several months, the court returned the remaining children to her custody with family maintenance services.

*Family Maintenance Review Hearings*

The juvenile court conducted family maintenance review hearings in July 2012, in January, June, and December 2013, and in May 2014.  A final review hearing was held in July and August 2014.

In July 2012, the Agency reported Mother was unemployed and living in transitional housing while providing full-time care to her children.  Although Mother was actively engaged in services and the family was participating in family therapy, Mother appeared overwhelmed by caring for five children and dealing with the family's service providers.  During this reporting period, Mother was in compliance with her service objectives but was not in compliance with her responsibility to participate in individual therapy.  Mother's eldest daughter appeared to be suffering from mental and emotional health issues due to trauma she had experienced in her mother's care.  The Agency's assessment was that while the family was participating in services, it was unstable.  It recommended family maintenance services be continued, and the juvenile court adopted that recommendation.

When the Agency filed its next report in January 2013, it found Mother was engaging in services but often felt overwhelmed.  While Mother was practicing new

---

[3] At the Agency's recommendation, the juvenile court terminated reunification services for E.L. at the 12-month status review hearing.

4

techniques learned from providers, the family continued to struggle. Mother was referred to individual therapy, but the services were terminated because she was unable to keep her appointments. As her therapist explained, however, Mother failed to keep appointments because she was dealing with Minors' medical emergencies and other appointment conflicts.

Mother participated with her family in services provided by the Early Intervention Services (EIS) Department of Oakland Children's Hospital, which reported Mother was "extremely engaged in treatment on behalf of her children," actively sought out additional support, and was open to interventions and feedback. The EIS team was concerned about Mother's capability to parent five emotionally challenged children as she struggled with her own mental health needs. The caseworker noted the home appeared to be in chaos and there were reports of accidental injuries to the children. Mother was nevertheless in compliance with her service objectives and client responsibilities. She was consistently engaged in her case plan and was meeting her children's needs. Despite her minimal progress in treatment, Mother was committed to the process. The four eldest children were participating in individual therapy in part to deal with trauma-related problems, and the youngest, who had not expressed any mental health concerns, was engaged in family therapy. After considering the report, the juvenile court accepted the Agency's recommendations, retained dependency jurisdiction, and continued family maintenance services.

During the reporting period preceding the June 2013 review hearing, the Agency received two referrals for child abuse and neglect. The first report was inconclusive and the second was "evaluated out[.]"[4] Mother participated in weekly therapy and completed a psychological assessment. She was participating with multiple service providers on a daily basis, collaborating with each child's therapist, and participating in dyadic therapy with each of the Minors. Mother was ensuring all her children's mental health and

---

[4] The social worker testified that the term "evaluated out" means the child protective services screener did not find sufficient evidence of physical abuse or child abuse and neglect to assign the referral to an investigation.

educational needs were met. She continued to be in compliance with her service objectives and client responsibilities and was expected to get a housing voucher from Oakland Housing Authority. The four oldest children continued to receive individual therapy, and the youngest was engaged in dyadic therapy with Mother. The Agency recommended Minors remain with Mother and that dependency and family maintenance services continue, recommendations the juvenile court accepted.

The Agency received two new referrals for child abuse and neglect before the December 2013 status review hearing. In October 2013, there was an allegation the youngest daughter was a victim of sexual abuse at the hands of Mother's nondependent 17-year-old son. The referral was evaluated out. The second referral alleged abuse by Mother and was also evaluated out. One of the Minors had a black eye and cuts on her legs. Mother stated the black eye occurred when the child was playing with her siblings outside, and the cuts when the glass shower door broke while she was in the bathroom.

During the reporting period, Mother obtained permanent housing through Oakland Housing Authority and moved into a three bedroom apartment. She continued to participate in individual therapy and was compliant with her appointments, service objectives, and client responsibilities set forth in her case plan. Minors continued individual therapy to deal with their emotional problems. The two oldest children were assigned a court-appointed special advocate (CASA). The Agency recommended Minors remain with Mother and that dependency and family maintenance services continue for another six months. The juvenile court again accepted the Agency's recommendations.

For the May 2014 status review hearing, the Agency recommended Minors stay in Mother's home and that dependency be dismissed. It also recommended Mother receive three months of informal family maintenance services and then transition to Family Reclaim services.[5] Mother agreed with these recommendations.

---

[5] Family Reclaim is a community-based organization that provides 18 months of extended case management, support, and referral services for families that no longer require formal court supervision.

6

The Agency received a referral during the reporting period alleging that Mother's older son was a victim of sexual abuse but the referral was found inconclusive. Mother cooperated with the Agency in creating a safety plan that included not allowing her nondependent son into her home or around Minors. Another referral alleging physical abuse by Mother was determined to be inconclusive. The assigned worker assessed the injuries that had occurred and determined that they were "not the result of neglect and/or abuse perpetrated by the [M]other."

Mother continued living in her three bedroom apartment, subsidized by the Oakland Housing Authority. She remained unemployed and received financial assistance from various state programs. Her participation in individual therapy was inconsistent because of her many meetings and appointments for Minors, and because her therapist did not have a flexible schedule. The therapist reported Mother worked very hard dealing with her abuse issues and PTSD, took her therapy sessions seriously, and continued to move forward. Even though Mother was not always able to make it to therapy weekly, she was ready to address her concerns and committed to therapy. Mother received a referral for a new therapist and first met with her in late April.

The Agency's overall assessment was that Mother had successfully reunified with her five children and engaged in her case plan activities. Mother attempted to meet her mental health needs without neglecting Minors' needs and managed to provide a permanent and stable home, food, and clothing for the children. Despite her limited means, Mother "adequately manage[d] her resources each month." While the service providers were concerned about the sexual abuse allegations, accidental injuries, and Mother's ability to parent five children, they agreed she was meeting Minors' needs as best she could and had been effective in collaborating with the their therapists and advocating for their educational rights. The service providers were unable to identify any additional service needs for the family.

On May 27, 2014, the juvenile court set the matter for a contested review hearing to begin on July 14. The Agency submitted a memorandum report for the hearing in which it continued to recommend Minors remain with Mother, that dependency be

7

dismissed, and that the family participate in three months of informal family maintenance services. Mother was still active in her case plan activities, including individual therapy. Her therapist reported she was very persistent and eager with her treatment and stayed in good contact regarding scheduling appointments. The therapist observed Mother was using techniques she learned in individual therapy. Additionally, Mother had engaged in case management services with Family Reclaim, which would continue on a weekly basis. Furthermore, Mother sought, on her own initiative, therapeutic services from the organization Family Paths to support her mental health needs. Lastly, Mother showed her ability to protect Minors from sexual abuse and to meet their medical, physical, mental health, and educational needs. The Agency did not identify any immediate safety concerns that would require continued dependency and court supervision.

*Final Family Maintenance Hearing*

At the hearing, the juvenile court admitted the Agency's reports into evidence. Two social workers assigned to the family's case testified Mother was in compliance with her case plan. Both social workers were of the opinion that conditions justifying initial assumption of dependency jurisdiction did not exist and were not likely to exist if supervision were withdrawn.

The family maintenance worker was questioned about incidents in which two of the Minors had sustained injuries and allegations that Mother's youngest daughter and older son had been sexually abused.[6] The worker explained a recent allegation of physical abuse had been investigated and found inconclusive. Mother herself reported another instance in which her youngest daughter was hit by a rock thrown by teenagers living in the family's apartment complex. This incident was not reported as abuse. Mother also reported an incident in which her youngest daughter was injured when a glass shower door shattered as she was bathing her daughter. There was no evidence Mother had intentionally shattered the shower door. The sexual abuse referrals were found inconclusive. Mother cooperated with the Agency in creating a safety plan to

---

[6] Both sexual abuse referrals involved allegations of abuse committed by Mother's nondependent son who was visiting from Southern California.

8

prevent any further possible sexual abuse, and the social worker testified Mother had abided by that plan.

The supervising social worker testified about the risk assessment the Agency had completed for the family. She acknowledged the assessment rated the family's risks for abuse and neglect as very high. She explained, however, that the risk level was high based upon the family's history with child protective services and Mother's own experience of child abuse and neglect, as well as her mental health problems, previous substance abuse, and criminal history. According to the supervising social worker, the family will always have a high risk score based on that history alone. The worker admitted Mother's home could be disorganized, but she said the home was still safe and the Agency had no outstanding safety concerns.

The CASA for Mother's older son testified to his concerns that the boy was not receiving adequate professional services. The CASA's supervisor instructed him, however, to focus on the child rather than on the professional service providers. The CASA considered Mother's home unsafe because clothing, toys, and household items were on the floor. In contrast, the CASA for Mother's oldest daughter reported that Mother's home was safe, comfortable, and healthy.

Minors called the therapist for Mother's younger son as an expert witness in child abuse and trauma. She testified she had made three calls to the child abuse hotline since becoming the boy's therapist. One of the calls concerned an instance in which the boy had run away from Mother and "outside intervention [was] needed to bring him back." When cross-examined about that incident, however, the therapist admitted she was unaware that the police had decided not to contact child protective services after doing a health and safety check. The therapist was also concerned for the boy's safety because of injuries he had suffered, but she conceded she had no evidence Mother caused the injuries and was unaware of the explanations his siblings had provided for how they occurred. She also admitted she based her safety concerns on referrals the Agency had found inconclusive. The therapist expressed her opinion that "the family would benefit from continued monitoring and support."

*The Juvenile Court's Ruling*

On August 22, 2014, after a contested hearing spanning multiple hearing dates, the juvenile court dismissed the case and adopted the Agency's recommendations. In its oral ruling, the juvenile court quoted the language of section 364(c). It stated, "given all the evidence that has been presented here, testimony, and the reports that have been submitted by the Agency, the Court does not believe that it's been established by a preponderance of the evidence that conditions still exist or are likely to exist." While the court noted "there are some concerns . . . that's not the standard[.]" The minute order states, "Conditions do not exist which would justify initial assumption of jurisdiction under section 300 and are not likely to exist if supervision is withdrawn." The juvenile court dismissed the dependency and ordered informal family maintenance.

Minors filed a timely appeal.

DISCUSSION

Minors' principal contention is that the juvenile court's order terminating dependency jurisdiction is unsupported by substantial evidence. They also argue the lower court erred by failing: (1) "to make a threshold determination of whether . . . [M]other had failed to participate regularly" in her court ordered treatment program and (2) to consider whether termination of dependency jurisdiction was in their best interests.

Minors' challenge to the sufficiency of the evidence supporting the juvenile court's order raises a novel question regarding which party bore the burden of proof at the section 364 review hearing. Since the allocation of the burden of proof in the lower court determines our standard of appellate review, we will turn to that issue after describing the statutory scheme governing review hearings for dependent children in in-home placements. We then address Minors' other contentions.[7]

---

[7] On June 11, 2015, we granted Advokids, a nonprofit child advocacy organization, leave to file a brief amicus curiae. Advokids asks us to harmonize sections 364 and 390 and "to interpret section 364 as requiring the juvenile court to make a finding as to whether the parent has regularly participated in the court-ordered service plan and whether dismissal is in the best interests of the child." The Agency urges us not to address this

10

I.    *Status Review Hearings for Dependent Minors Who Remain in Parental Custody*

After the juvenile court finds a child is a person described in section 300, it must "hear evidence on the question of the proper disposition to be made of the child." (§ 358, subd. (a).)  In appropriate circumstances, the court may declare the child a dependent, and "without removing the child from his or her home, order family maintenance services to ameliorate the conditions that made the child subject to the court's jurisdiction."[8] (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 302 (*Bridget A.*).)  Once a child has been declared a dependent, the juvenile court must review the status of the child every six months. (*Id.* at p. 303; see Cal. Rules of Court, rule 5.710(a).)  "The applicable standards at the six-month review hearing differ depending on the child's placement." (*In re Maya L.* (2014) 232 Cal.App.4th 81, 98.)  Section 364 provides the standard when "a child under the supervision of the juvenile court . . . is not removed from the physical custody of his or her parent or guardian[.]"[9] (§ 364, subd. (a); see *In re Pedro Z., Jr.*

issue, noting that section 390 was not raised either below or in the parties' appellate briefs.

Ordinarily, an amicus must take the case as it finds it and accept the issues tendered by the parties to the appeal. (*Berg v. Traylor* (2007) 148 Cal.App.4th 809, 823, fn. 5.)  As a general rule, California courts will not consider issues raised for the first time by an amicus. (*Mercury Casualty Co. v. Hertz Corp.* (1997) 59 Cal.App.4th 414, 425.)  As Advokids itself admits, neither party to this appeal discusses section 390. We therefore follow the general rule and decline to exercise our discretion to consider the issue.

[8] Family maintenance services are "activities designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation, for the purposes of preventing separation of children from their families." (§ 16501, subd. (g).)  They "may be extended in periods of six-month increments if it can be shown that the objectives of the service plan can be achieved within the extended time periods . . . ." (§ 16506.) Unlike family reunification services, nothing in the Welfare and Institutions Code or the California Rules of Court limits the time period for court supervision and services for dependent minors who remain at home, so family maintenance services may be provided until the dependent minors reach the age of majority. (*In re Joel T.* (1999) 70 Cal.App.4th 263, 267-268.)

[9] Like most California appellate courts, we have held section 364 also applies in cases such as this, where children have been removed from the physical custody of a parent but later returned. (*In re Shannon M.* (2013) 221 Cal.App.4th 282, 290 (*Shannon M.*) [§ 364

(2010) 190 Cal.App.4th 12, 20 ["when the child remains in a parent's home, the court reviews the status of the case every six months under section 364"].)

At the section 364 review hearing, "the court is not concerned with reunification, but in determining 'whether the dependency should be terminated or whether further supervision is necessary.' [Citations.]" (*In re Pedro Z., Jr., supra,* 190 Cal.App.4th at p. 20; see *In re Maya L., supra,* 232 Cal.App.4th at p. 98.) The juvenile court makes this determination "based on the totality of the evidence before it." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2015) § 2.150[3], at p. 2.505.) Part of the evidence the juvenile court must consider is the supplemental report of the social worker (Cal. Rules of Court, rule 5.706(d)(1)), who must "make a recommendation regarding the necessity of continued supervision." (§ 364, subd. (b).)

Section 364(c) establishes a "statutory presumption in favor of terminating jurisdiction and returning the children to the parents' care without court supervision." (*Shannon M., supra,* 221 Cal.App.4th at p. 290.) Under the statute, the juvenile court "*shall terminate* its jurisdiction *unless* the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364(c), italics added.) While the statute speaks in terms of the social worker or department establishing the basis for the continuation of dependency jurisdiction, the first sentence of section 364(c) makes clear that the parent, the guardian, or the child may offer evidence on that question. (See *In re J.F.* (2014) 228 Cal.App.4th 202, 210-211 (*J.F.*).) Furthermore, even if the social worker

applies when children either "were never removed or . . . were removed and returned home"]; accord, *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650; *Bridget A., supra,* 148 Cal.App.4th at pp. 313-316; *In re N.S.* (2002) 97 Cal.App.4th 167, 171-172.) Some California Courts of Appeal have interpreted the scope of section 364 narrowly, holding it applies only when a child has never been removed from the physical custody of the parent or guardian. (See *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1450-1451; *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1493-1494, disapproved on other grounds in *In re Chantal S.* (1996) 13 Cal.4th 196, 204.) We need not explore this issue further, however, because in this case the parties agree section 364 supplies the governing standard.

12

or department recommends termination of dependency jurisdiction, the juvenile court is not bound by that recommendation and may retain jurisdiction "if there is a preponderance of evidence that the conditions are such to justify that retention." (*Id*. at p. 210; *In re D.B.* (2015) 239 Cal.App.4th 1073, 1086 [social service agency's recommendation is not controlling].)

In short, under section 364(c), the juvenile court must terminate dependency jurisdiction unless either the parent, the guardian, the child, or the social services agency establishes by a preponderance of the evidence that the conditions justifying assumption of jurisdiction exist or will exist if supervision is withdrawn. Thus, in the absence of a contrary showing at the review hearing, termination of dependency jurisdiction will be the "default result." (*Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, 1392 (*Hume*).)

II.     *Standard of Review*

A number of reported decisions have reviewed orders made pursuant to section 364 for substantial evidence. (E.g., *In re D.B., supra,* 239 Cal.App.4th at p. 1086; *J.F., supra,* 228 Cal.App.4th at p. 209; *In re N.S., supra,* 97 Cal.App.4th at p. 172.) We have no quarrel with the use of the substantial evidence standard in those cases. As Minors correctly point out, however, "almost all reported cases are appeals by a parent or the agency, not a child." Minors accurately observe that "[n]o published case has addressed what . . . standard of review applies where the social service agency was the party that requested termination of jurisdiction and the child or children opposed the request."[10]

_____

[10] There are few published cases in which the social services agency has recommended termination of dependency jurisdiction to the juvenile court. And in those cases, the appellants were parents who agreed with the agency's position. Their appeals challenged the juvenile court's decision to continue supervision despite the social service agency's recommendation. (See *In re D.B., supra,* 239 Cal.App.4th at pp. 1080-1081, 1084; *J.F., supra,* 228 Cal.App.4th at p. 205 .) Thus, the appellants in those cases did not ask the juvenile court to depart from the "statutory presumption" in favor of termination. (*Shannon M., supra,* 221 Cal.App.4th at p. 290.) Such cases are distinguishable from the

The substantial evidence standard of review applies in the usual case in which the social services agency opposes termination of jurisdiction, "[b]ut this test is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case. [Citations.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 (*I.W.*).)

As there was no published case discussing which party bore the burden of proof at a section 364(c) review hearing when the dependent minors opposed the social services agency's recommendation that jurisdiction be terminated,[11] we asked the parties to submit supplemental briefs on whether the standard of review articulated in *I.W., supra,* 180 Cal.App.4th 1517 should be applied to the order before us.[12] In their supplemental briefs, both Minors and the Agency argued *I.W.* does not apply. Both took the position that the Agency has the burden of proof even where its position is that the dependency case should be dismissed. We then asked the parties to tell us at oral argument whether they continued to adhere to that position in light of (1) the statute's presumption in favor of termination of dependency jurisdiction and (2) its express allocation of the burden of

one before us, because here, the appealing parties opposed the Agency's recommendation that jurisdiction be terminated.

[11] Although it does not discuss the issue, *In re D.B., supra,* 239 Cal.App.4th 1073 might arguably be read as assuming that a social services agency recommending termination of dependency jurisdiction bears the burden of proving termination is justified, i.e., by establishing the *nonexistence* of conditions justifying retention of jurisdiction. (*Id.* at p. 1085 ["SSA took the position and proved those conditions no longer existed"].) The case contains no analysis of the issue, however.

[12] Minors submitted a supplemental letter brief. The Agency then filed a supplemental brief in response. Although Minors were given the opportunity to submit a reply, they did not do so.

14

proof to social services agency when the agency opposes termination. At oral argument, Minors' counsel reaffirmed her view that the Agency bore the burden of proof. Counsel for the Agency, however, informed us her client had changed its position and now contended Minors, as the parties opposing termination, bore the burden of proof.

The parties' supplemental briefs are devoted to addressing the burden of proof in the juvenile court. Clearly, they recognize that to determine our standard of review, we must first resolve which party bore the burden of proof on the relevant issue. (See *Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 732.) That is, which party at the review hearing was required to "establish[ ] . . . that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn"? (§ 364(c).) Allocation of the burden of proof presents an issue of statutory construction subject to de novo review. (See *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741.) As we explain, because section 364(c) would have required the juvenile court to terminate dependency jurisdiction in the absence of proof of conditions justifying assumption of jurisdiction, the burden of proof was on Minors, because they were the parties seeking to establish the existence of those conditions.

A. *Language and History of Section 364(c)*

Section 364(c) currently provides: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary."

What we have called the "statutory presumption" in favor of termination of jurisdiction is found in the second sentence of section 364(c). (*Shannon M., supra,* 221

15

Cal.App.4th at p. 290.)  The relevant language of this sentence was added to section 364 in 1982 by Senate Bill No. 14, and was part of a larger set of revisions to the laws governing juvenile dependents.[13]  (Stats. 1982, ch. 978, § 22, pp. 3537-3538; see generally *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 246.)  The portion of the text requiring termination of jurisdiction was first adopted by the Senate on January 26, 1982 as an amendment to the proposed bill.[14]  (4 Sen. J. (1981-1982 Reg. Sess.) pp. 7223, 7226-7227.)

Prior to this amendment, once the juvenile court had assumed dependency jurisdiction, the burden of proof ordinarily " 'was on the person seeking a termination of the court's jurisdiction "to show cause, if [he has] cause, why the jurisdiction of the court over the minor should be terminated." ' [Citations.]" (*Shannon M., supra,* 221 Cal.App.4th at p. 290.)  The effect of the new language was to shift the burden of proof on the issue of termination of dependency jurisdiction from the party requesting termination to the party opposing it.  Section 364(c) appears to presume "the social worker or his or her department" will typically be the party opposing termination.

---

[13] Prior to amendment, section 364 read:  "In any case in which the court has ordered that a parent or guardian shall retain physical custody of a minor who is found to be a person described in subdivision (d) of Section 300, subject to supervision of the probation officer, whenever the probation officer subsequently receives a report of acts or circumstances which indicate that there is reasonable cause to believe that the minor is a person described in subdivision (d) of Section 300, he shall commence proceedings under this chapter.  If, as a result of the proceedings required, the court finds that the minor is a person described in subdivision (d) of Section 300, the court shall remove such minor from the care, custody, and control of his parent or guardian and shall commit such minor to the care, custody, and control of those persons or organizations enumerated in Section 362." (Stats. 1976, ch. 1068, § 10, p. 4774.)  The language of former section 364 was in turn derived from former section 727.6.  (Stats. 1971, ch. 1729, § 6, pp. 3679-3680.)

[14] We have located no legislative history explaining the origin or intent of this particular language, but the history of Senate Bill No. 14 shows the Legislature was generally concerned with providing greater emphasis on services to maintain children in their homes when safe to do so and on protection of the rights of parents of children in the dependency system.  (See Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 14 (1981-1982 Reg. Sess.) as amended Aug. 19, 1982, p. 1; *Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p. 246.)

16

Thus, in the typical case in which the social services agency *opposes* termination of jurisdiction, the statute expressly allocates the burden of proof to the agency. (§ 364(c) ["The court shall terminate its jurisdiction unless *the social worker or his or her department* establishes by a preponderance of evidence . . . ."], italics added.) While the first sentence of section 364(c) allows parents, guardians, and dependent minors to offer evidence on whether jurisdiction should be terminated (*J.F., supra,* 228 Cal.App.4th at p. 210), the statute is silent on which party bears the burden of proof where the social services agency recommends termination and another party opposes that recommendation. Since the statute itself does not allocate the burden of proof in these circumstances, "we must look elsewhere to determine where that burden should be properly placed." (*In re Audrey D.* (1979) 100 Cal.App.3d 34, 42 (*Audrey D.*).)

B.    *The Statutory Status Quo and its Effect on the Burden of Proof*

In *Hume, supra,* 140 Cal.App.4th 1385, the Fourth District provided a helpful framework for analyzing this issue. *Hume* explained: "The burden of proof is to law what inertia is to physics—a built-in bias in favor of the status quo. [Citation; fn. omitted.] That is, if you want the court to *do* something, you have to present evidence sufficient to overcome the state of affairs that would exist if the court did nothing." (*Id.* at p. 1388.) The burden of proof is allocated "functionally, assigning the role of 'plaintiff' to the party seeking to upset the status quo." (*Id.* at p. 1392.) "Of course, the hard work for courts presented with burden of proof issues is to ascertain the true nature of the status quo, or the baseline where the court starts." (*Id.* at p. 1388.) Our task is therefore to identify the status quo or baseline in this particular case.

To determine the status quo, courts look to the relevant statute or statutory scheme. (*Hume, supra,* 140 Cal.App.4th at p. 1389 [looking to "relevant Probate Code statutes governing inventory and accountings in conservatorship proceedings"]; accord, *Vance v. Bizek* (2014) 228 Cal.App.4th 1155, 1164 [looking to provisions of Probate Code governing disclaimer of interest by trust beneficiary to determine status quo].) Where the statutory scheme dictates a particular result in the absence of a contrary showing, "[t]his state of affairs is the status quo." (*In re Estate of Lensch* (2009) 177

17

Cal.App.4th 667, 681 (*Lensch*); accord, *Hume, supra,* 140 Cal.App.4th at p. 1389 [where appraisal statutes provided that conservator " 'shall file' " an inventory and appraisal under oath, filing of verified appraisal was baseline or status quo]; see also *In re R.V.* (2015) 61 Cal.4th 181, 197, 200 [because statute presumes juvenile ward is competent, burden of proving incompetency is on party asserting it, and juvenile court may determine minor is competent even if prosecution offers no evidence].)  A review of the case law illustrates this point.

In *Lensch,* the decedent, Gladys, left a will dividing her estate between her daughter Claudia and her son Jay.  (*Lensch*, *supra*, 177 Cal.App.4th. at p. 671.)  Jay was found dead 11 hours after Gladys's death.  (*Ibid*.)  Jay's will disinherited his two sons, Jason and Ean.  (*Ibid*.)  Claiming they were entitled to Jay's share of Gladys's estate, Jason and Ean petitioned for a determination of which family member died first.  (*Id*. at pp. 671, 675.)  The executor of Jay's estate opposed the petition.  (*Id*. at p. 672.)  Under the applicable provision of the Probate Code, in the absence of evidence of whether Gladys or Jay had died first, Gladys's gift to her son would pass to his children, as if she had survived her son.  (*Id*. at p. 681.)  This was the "status quo" under the statutory scheme.  Since the claim that Jay survived Gladys upset the status quo, the burden of proof was properly placed on the executor of Jay's estate, "the party to whom proof of survival is essential to taking under her will."  (*Ibid*.)

Similarly, in *People v. Gregerson* (2011) 202 Cal.App.4th 306 (*Gregerson*), an involuntarily committed mentally disordered offender (MDO), sought placement in outpatient treatment under Penal Code section 2972.  (*Id*. at pp. 310-311.)  Gregerson, the offender, conceded he met the criteria for extension of his MDO commitment.  (*Id*. at p. 311.)  He sought outpatient treatment under Penal Code section 2972, subdivision (d), which provides: "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis."  (*Gregerson, supra,* 202 Cal.App.4th at p. 314.)  The Court of Appeal rejected Gregerson's contention that he should not bear the burden of proving his suitability for outpatient treatment.  It explained that under the

statute, the "relevant baseline" is recommitment if Gregerson still met the MDO criteria. (*Id*. at p. 316, citing Pen. Code, § 2972, subd. (c) ["the court *shall* order the patient recommitted"], italics added.) "Once continuing MDO status is shown, the status quo becomes continued involuntary commitment—that is the state of affairs that would exist if the court does nothing further. At that point, release on outpatient treatment would upset the 'built-in bias in favor of the status quo.' [Citation.] And it would upset the status quo to the benefit of appellant." (*Gregerson, supra,* 202 Cal.App.4th at p. 316.) Thus, because recommitment was the state of affairs that would have prevailed in the absence of court action, recommitment was the status quo, and Gregerson accordingly bore the burden of proof as the party seeking to upset that status quo. (*Ibid*.)

A case predating *Hume* applied the same type of analysis in the juvenile dependency context. In *Fresno County Dept. of Children & Family Services v. Superior Court* (2004) 122 Cal.App.4th 626 (*Fresno County*), an Indian child and her half-sister were removed from parental custody and placed with a foster family that later sought to adopt them. (*Id*. at pp. 631, 634-635.) An Indian tribe filed a section 388 petition seeking adoptive placement of the children with an Indian family. (*Id*. at pp. 631, 636.) The Indian Child Welfare Act (ICWA) requires that "absent 'good cause' . . . adoptive placements be made preferentially with (1) members of the child's extended family, (2) other members of the same tribe, or (3) other Indian families." (*Id*. at p. 641, citing 25 U.S.C. § 1915(a).) The children's counsel opposed the tribe's request, and at the hearing on the petition, the juvenile court placed the burden of proof on the children to contest the placement preference. (*Id*. at p. 639.) The juvenile court ultimately denied the petition, finding good cause for not following ICWA's preference for Indian placement. (*Id*. at p. 640.) The Court of Appeal held the juvenile court had properly placed the burden of proof on the children. (*Id*. at p. 644.) The tribe's request to change the placement was "based on ICWA and its preference for placement with an Indian family." (*Ibid*.) Since the children sought to have the juvenile court do something other than follow the statutory mandate, they properly bore the burden of proof on the issue of good cause. (*Ibid*.)

19

Thus, *Fresno County*'s holding is in line with the rule articulated in *Hume*. Because ICWA's statutory preference for placement with an Indian family would be "operative unless something else happens," placement with an Indian family was the "baseline, or status quo[.]" (*Hume, supra,* 140 Cal.App.4th at p. 1389.) Since the children were "trying to change the result that would normally obtain without intervention" (*id.* at p. 1390), the juvenile court "appropriately placed the burden on the children's counsel to establish good cause not to follow the preference." (*Fresno County, supra,* 122 Cal.App.4th at p. 644.) *Fresno County* is particularly relevant to our case because the Court of Appeal placed the burden of proof on the children even though the tribe sought a change in the children's existing placement by removing them from the foster family and placing them with Indian relatives. (*Id.* at pp. 634-635.) Although granting the tribe's petition would have changed the children's placement, the status quo was determined by ICWA's placement preference. In other words, the status quo was the result the relevant statute would have dictated in the absence of a contrary showing. (See *Lensch, supra,* 177 Cal.App.4th at p. 681.)

Having examined the language of section 364, we turn to the general rule of Evidence Code section 500 "to round out the picture."[15] (*Hume, supra,* 140 Cal.App.4th at p. 1390; *Audrey D., supra,* 100 Cal.App.3d at p. 44.) "Under Section 500, the burden of proof as to a particular fact is normally on the party to whose case the fact is essential." (Cal. Law Revision Com. com., 29B Pt. 1B West's Ann. Evid. Code (2011) foll. § 500, p. 309.) This rule reflects "the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Here, Minors asked the juvenile court to retain jurisdiction over them. In the language of Evidence Code section 500, this was a "claim for relief" because Minors sought to persuade the court to depart from the statutory presumption in favor of termination of jurisdiction. (See *Hume, supra,* 140

---

[15] Evidence Code section 500 provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

Cal.App.4th at p. 1390.) Essential to this claim for relief was a showing "that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364(c).) In contrast, the Agency cannot be said to have asserted a claim for relief, since it did no more than recommend that the juvenile court do what section 364(c) would ordinarily require.[16] Because its recommendation accorded with the statutory presumption in favor of termination, the Agency was under no duty to present any further proof. (See *In re R.V., supra,* 61 Cal.4th at p. 200 [because ward is presumed competent, prosecution need not present affirmative evidence of competency].)

    C.    *Because Minors Seek to Upset the Statutory Status Quo of Termination of Dependency Jurisdiction, They Bear the Burden of Proof.*

Applying the foregoing analysis to the case before us, it is evident the status quo under section 364(c) is termination of dependency jurisdiction. (§ 364(c) ["The court *shall terminate* its jurisdiction *unless*" conditions justifying retention of jurisdiction are shown to exist], italics added; Cal. Rules of Court, rule 5.706(e)(1) ["The court *must* terminate its dependency jurisdiction . . ."], italics added; *J.F., supra,* 228 Cal.App.4th at p. 210.) The statute's use of the word "shall" indicates termination of jurisdiction is mandatory in the absence of appropriate proof. (§ 15 [" 'Shall' is mandatory"]; *In re D.B., supra,* 239 Cal.App.4th at p. 1085 [in § 364(c), "use of the word 'shall' denotes a mandatory act"].) The juvenile court is under a duty to terminate dependency jurisdiction unless "there is a preponderance of evidence that the conditions are such to justify that retention." (*J.F., supra,* 228 Cal.App.4th at p. 210.) The baseline is therefore the

---

[16] For this reason, we disagree with the argument in the Agency's supplemental brief that the social services agency retains the burden of proof even when its recommendation is that continued supervision is no longer necessary and jurisdiction should be terminated. Section 364(c) expressly places the burden of proof on the social services agency when the agency opposes termination of jurisdiction. It says nothing about which party has the burden when the social services agency recommends termination. Since "[t]he Legislature obviously knows how to charge the agency with an evidentiary obligation in a dependency proceeding," we may infer that it would have explicitly imposed the burden of proof on the agency to prove jurisdiction should be terminated if it had wished to do so. (See *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1344.)

21

juvenile court's obligation to terminate jurisdiction and return children to their parents. (See *Lensch, supra,* 177 Cal.App.4th at p. 681 [status quo is testamentary disposition that would obtain in absence of other evidence]; *Hume, supra,* 140 Cal.App.4th at p. 1389 [status quo under Probate Code is conservator's duty to file an inventory].) Here, "it is [Minors] who seek[] to upset the status quo" (*ibid.*) because they are "trying to change the result that would normally obtain without intervention[.]" (*Id.* at p. 1390.) And this is true even though the termination order results in a change in Minors' dependency status. (See *Fresno County, supra,* 122 Cal.App.4th at pp. 634-635, 644.)

Where, as here, the social services agency recommends termination of jurisdiction, termination will be the "default result" unless either the parent, the guardian, or the child objects and establishes by a preponderance of the evidence that conditions justifying retention of jurisdiction exist or are likely to exist if supervision is withdrawn. (See *Hume, supra,* 140 Cal.App.4th at p. 1392.) In this case, Minors were the parties seeking to persuade the juvenile court to do something other than follow the statutory presumption favoring termination of jurisdiction. As such, they bore the burden to establish the existence of conditions justifying retention of dependency jurisdiction. (See *Fresno County, supra,* 122 Cal.App.4th at p. 644.)

    D.    *The Evidence Does Not Compel a Finding in Minors' Favor.*

Having concluded Minors bore the burden of proof below, it follows that we review the juvenile court's ruling under the standard of *I.W., supra,* 180 Cal.App.4th 1517. Since the juvenile court terminated jurisdiction, it plainly did not find Minors had met their burden of proof. As the issue on appeal turns on Minors' failure of proof at trial, the question is "whether the evidence compels a finding in favor of the appellant[s] as a matter of law." (*Id.* at p. 1528.) We conclude it does not.

Minors' opening brief points us to evidence of the family's problems and Mother's inconsistent participation in individual therapy.[17] Most of the evidence is from the early

---

[17] Many of Minors' assertions in this portion of their brief are unsupported by citations to the record. On that basis alone, we could disregard them. (*Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388, 392, fn. 2.) "Each and every statement in a

stages of the dependency proceeding, however. For example, Minors cite the allegations in the August 24, 2010 section 300 petition and refer to a September 8, 2010 jurisdiction/disposition report. They fail to mention later reports documenting Mother's progress in complying with her case plan. And while Minors quote the social worker's August 22, 2014 testimony that the family's risk level was "very high," they take it out of context and ignore the social worker's testimony that the Agency found no safety concerns and that Mother had alleviated the conditions that led to initial assumption of jurisdiction. Such a selective discussion of the evidence would not satisfy Minors' burden of showing error even under the substantial evidence standard of review. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 414-415 [appellant challenging finding as unsupported by substantial evidence must set forth all material evidence on the point].) It necessarily cannot suffice to demonstrate Minors' evidence "was . . . 'uncontradicted and unimpeached' and . . . 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*I.W., supra,* 180 Cal.App.4th at p. 1528.)

The Agency's brief details much of the evidence supporting termination of jurisdiction. We need not discuss that evidence here other than to note Minors make almost no effort to refute it in their reply brief. (See *In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1351 [failure to respond to argument is implicit concession].) Instead, Minors simply direct us to evidence in the record that might have supported a conclusion different from that reached by the juvenile court. "Here, as in many dependency cases, the case posed evidentiary conflicts. And, as is common in many dependency cases, this case obligated the juvenile court to make highly subjective evaluations about competing, not necessarily conflicting, evidence. . . . It is not our function to retry the case. We therefore decline [Minors'] implicit invitation to review the record so as to recount

---

brief regarding matters that are in the record on appeal, whether factual or procedural, must be supported by a citation to the record. This rule applies regardless of where the reference occurs in the brief." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 96-97, fn. 2.)

23

evidence that supports [their] position (reargument) with the object of reevaluating the conflicting, competing evidence and revisiting the juvenile court's failure-of-proof conclusion." (*I.W., supra,* 180 Cal.App.4th at p. 1528.) This is not a case "where undisputed facts lead to only one conclusion." (*Id.* at p. 1529; see *In re R.V., supra,* 61 Cal.4th at p. 203 [reviewing court "inquires whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"], fn. omitted.) Minors have failed to meet their burden on appeal. (*I.W., supra*, 180 Cal.App.4th. at p. 1529.)

III.    *We May Imply a Finding on Mother's Participation in Her Court Ordered Treatment Plan.*

Minors argue the juvenile court erred by failing to make an express finding on Mother's participation in her case plan. Under section 364(c), the "[f]ailure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary." Minors contend the Agency's own evidence established Mother had failed to comply with her court ordered treatment plan. We disagree.[18]

A.    *Section 364(c) Does Not Require an Express Finding.*

Assuming this argument is properly before us, it has no merit. Unlike section 364, some provisions of the Juvenile Dependency Law expressly require the juvenile court to set forth the facts supporting its decision. For example, section 366.21, subdivisions (e) and (f) govern six-month and 12-month status review hearings for minors not in parental custody. Both subdivisions require the juvenile court to "specify the factual basis for its

---

[18] We question whether this issue has been preserved for appeal. Although Minors tell us their counsel requested this finding from the juvenile court, we have reviewed the cited page of the reporter's transcript and find no such request. Ordinarily, specific findings of fact are required in dependency proceedings only if requested by a party. (E.g., *In re Marcel N.* (1991) 235 Cal.App.3d 1007, 1013-1014 [findings to support termination of parental rights].) The failure to request a finding constitutes an implied waiver. (See *In re Randi D.* (1989) 209 Cal.App.3d 624, 631.) We could therefore treat this contention as forfeited.

conclusion" as to whether return of the minor to parental custody would be detrimental.[19] (§ 366.21, subds. (e), (f).) Section 364 also governs status review hearings, but it contains no similar language requiring an express finding on the issue of a parent's failure to participate in court ordered treatment. The omission of such language is significant, because " ' "[w]here a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted." ' " (*In re A.M.* (2010) 187 Cal.App.4th 1380, 1389, quoting *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1240.) In other words, the Legislature has shown that when it intends for the juvenile court to make express findings on an issue at a review hearing, it knows how to use language clearly expressing that intent. (See *In re Chantal S., supra,* 13 Cal.4th at pp. 206-207.) This strongly suggests the juvenile court did not need to make any specific, on-the-record finding concerning Mother's participation in her court ordered treatment program. (See *In re A.M., supra,* 187 Cal.App.4th at p. 1389.)

Where the statute does not mandate explicit findings, and where substantial evidence supports the juvenile court's order, findings may be implied. (See, e.g., *In re A.A.* (2008) 167 Cal.App.4th 1292, 1321 [court would imply finding under Indian child exception of § 366.26, subd. (c)(1)(B)(vi)]; *In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 838 [termination of visitation; former § 361, subd. (a)]; *In re Corienna G.* (1989) 213 Cal.App.3d 73, 83 [permanency planning order; former § 366.25, subd. (d)].) Here, the juvenile court's decision to terminate dependency jurisdiction necessarily means it found conditions justifying an initial assumption of jurisdiction under section 300 did not exist and were unlikely to exist if supervision were withdrawn. (§ 364(c).) Since Mother's failure to participate in her court ordered treatment program would have constituted prima facie evidence that such conditions *did* still exist (§ 364(c)), it is

---

[19] Another such provision is section 361, which concerns removal from parental custody. (§ 361, subd. (d) ["court shall state the facts on which the decision to remove the minor is based"].) Yet another is section 361.2, which governs placement with a noncustodial parent. (§ 361.2, subd. (c) ["court shall make a finding either in writing or on the record of the basis for its determination"].)

reasonable to infer the juvenile court found to the contrary. (See *In re A.A., supra,* 167 Cal.App.4th at p. 1321 [where juvenile court issues order terminating parental rights, reviewing court will imply from termination order that juvenile court also found termination would not be detrimental to minor].) The juvenile court could not have concluded Mother had failed to participate regularly in court ordered treatment and still have terminated jurisdiction. The finding regarding Mother's participation in her court ordered treatment plan may therefore be implied from the juvenile court's ruling.

B.    *Substantial Evidence Supports the Juvenile Court's Implied Finding.*

The only remaining question is whether the juvenile court's implied finding on this issue is supported by substantial evidence. (*In re Corienna G., supra,* 213 Cal.App.3d at pp. 83-84.) We conclude it is. The Agency reported in December 2013 that Mother continued to participate in individual therapy and was compliant with her appointments. According to the Agency's report, Mother was "open-minded to services available for her children, meeting with service providers regularly and providing adequate and appropriate care."

While the Agency's May 27, 2014 status review report stated Mother's participation in individual therapy had been "inconsistent," it noted Mother often had to cancel therapy sessions because of appointments and meetings involving her children. This was due, in part, to the inflexibility of the therapist's schedule. And despite the inconsistent nature of Mother's attendance, her therapist reported Mother "worked very hard dealing with her abuse issues and PTSD." In addition, the therapist opined Mother "has taken her therapy sessions seriously" and "has come a long way and . . . takes ownership of her responsibilities." At the hearing, the child welfare worker testified Mother was compliant with her case plan requirements.

The Agency's July 14, 2014 memorandum report explained Mother continued to be actively involved in her case plan. Mother had requested a new referral to a new therapist. The therapist reported Mother was "very persistent and eager with her treatment." Mother's scheduling difficulties were "due to no child-care for the five [M]inors." The Agency reported Mother was able to meet Minors' "medical, physical,

educational and mental health needs." This evidence suffices to support the juvenile court's implied finding.

Minors recite other evidence in the record that might support conclusions different from those drawn by the juvenile court. Challenges to resolution of disputed factual questions are governed by the substantial evidence standard of review, however, and that standard does not permit a reviewing court to "substitute its judgment for that of the juvenile court." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 584.) We do not "reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court." (*Id*. at p. 589.) Instead, we " 'accept[] the evidence most favorable to the order as true and discard [ ] the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.' " (*Id*. at p. 595, quoting *In re Casey D*. (1999) 70 Cal.App.4th 38, 53.) Because the juvenile court's findings are adequately supported by the record, we have no power to disturb them.

Despite the evidence just discussed, Minors suggest the juvenile court was persuaded to terminate jurisdiction not because it had concluded Minors would not be at risk in Mother's custody, "but rather because the social workers were weary of monitoring and trying to address the intractable problems and erratic behaviors of an extremely stressed and impoverished single mother and her five children." We refuse to entertain this suggestion. Minors point to nothing in the record that would support such an accusation of improper motive on the part of the Agency's employees. (See *In re S.C., supra,* 138 Cal.App.4th at p. 412 [unwarranted personal attacks on character or motives of opposing party are inappropriate].) Minors' speculation about the juvenile court's reasons is irrelevant in any case. "Trial court judgments which are on their face correct, are not overturned because a reviewing court suspects the trial judge based his decision on an unexpressed and improper ground, in violation of his oath of office." (*People v. Lindsey* (1972) 27 Cal.App.3d 622, 637.)

We are not unmindful of the formidable challenges Mother faces. She is a woman of very limited means who must parent the five Minors while dealing with her own mental health problems and those of her children. At the hearing below, the Agency

27

candidly admitted the family's situation may not be optimal or perfect and that Mother may be overwhelmed at times. But as the Agency argued, that is not the same as abuse or neglect. And it does not compel the continued exercise of dependency jurisdiction. "The parents who come through the dependency system are more in need of help than most. If we are lucky, they are parents who can learn to overcome the problems which landed their children in the system, and who can demonstrate the dedication and ability to provide for their children's needs in an appropriate manner." (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789.) In cases such as this, "[w]e are looking for passing grades . . . , not straight A's." (*Id.* at p. 790.)

IV.  *Minors Have Not Shown the Juvenile Court Failed to Consider their Best Interests.*

Minors contend the juvenile court misinterpreted its duty by failing to consider whether the children's best interests would be served by maintaining dependency jurisdiction. They argue this merits reversal. We disagree.

Initially, Minors direct us to nothing in the record showing this argument was raised below. By failing to present the issue to the juvenile court, Minors have forfeited the issue. (E.g., *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.) Even if Minors had preserved the argument for our review, it would fail.

Minors assert the juvenile court "does not appear to have considered whether the children's best interests would be served by terminating dependency jurisdiction." Even assuming the best interests standard applied at the review hearing,[20] Minors point to nothing showing the juvenile court failed to consider their best interests. In essence, they ask us to "presume from the record's silence that the juvenile court was either unaware of, or failed to perform, its [alleged] statutory duty to consider" their best interests. (*In re Julian R.* (2009) 47 Cal.4th 487, 498.) We refuse to do so, because established principles of appellate review command us to presume the opposite—that the juvenile court was

---

[20] The Agency argues this is not the standard applicable at a section 364 review hearing. As we conclude Minors' argument fails for other reasons, we need not decide the question and decline to explore it further.

28

aware of and followed applicable law.  Error must be affirmatively shown, but Minors have not met their burden to do so.  (*Id.* at p. 499.)

DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

A143211
Superior Court of the County of Alameda, Nos. HJ10015424, HJ100154245, HJ10015426, HJ10015427, HJ10015428, Willie Lott, Jr., Judge

Deborah Dentler, for Appellants.

Margaret Coyne as Amicus Curiae on behalf of Appellants.

Donna Ziegler, County Counsel, Gabrielle Janssens, Associate County Counsel, for Plaintiff and Respondent.

A143211