Filed 3/23/22  Nader & Sons v. Namvar CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NADER & SONS et al., | B314150 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No.SS018783) |
| v. | |
| HOMAYOUN NAMVAR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Harry Jay Ford III, Judge.  Affirmed.

Law Offices of Bruce Altschuld and Bruce Altschuld for Defendant and Appellant.

Hill, Farrer & Burrill, Daniel J. McCarthy, Clayton J. Hix for Plaintiffs and Respondents.

Appellant Homayoun "Tony" Namvar challenges the denial of his motions to vacate the renewal of a New York judgment against him that respondents Nader & Sons, LLC and Sisko Enterprises, LLC originally domesticated in California in 2009. He contends the judgment has been satisfied, because a settlement agreement in a related bankruptcy case entitles him to dollar-for-dollar credit for payments made to respondents by another individual. Appellant also contends that a recent New York judgment rejecting this argument was incorrectly decided and should not be given binding effect here. We conclude the trial court did not abuse its discretion and affirm.

## BACKGROUND

*Loans and Guaranties*

In June 2008, respondent Nader & Sons loaned $7.5 million to Namco Capital Group, Inc. (Namco). Namco, along with pledgors N.Y. 18, LLC and Beshmada, LLC and guarantors appellant and Ezri Namvar (Ezri),[1] entered into a "Loan, Pledge and Security Agreement" in favor of Nader & Sons to secure the loan. Pursuant to the Loan, Pledge and Security Agreement, N.Y. 18 and Beshmada pledged as collateral their respective membership interests in 127 West 25th, LLC and 241 Fifth Ave. Hotel, LLC. The pledged interests included an unrelated personal guaranty previously made in Beshmada's favor by Dan Shavolian (the Shavolian Guaranty). (See *Nader & Sons LLC v. Shavolian* (Dec. 3, 2018, G055458) [nonpub. opn.].)[2]

---

[1] We refer to Ezri Namvar by his first name to avoid confusion. No disrespect is intended.

[2] Appellant requested judicial notice of the Fourth District's opinion below. The appellate record does not include a ruling on

2

In a separately executed personal guaranty, appellant guaranteed the full and timely repayment of the loan. The guaranty stated that it "shall in all respects be a continuing, absolute, unconditional and irrevocable guaranty of payment, and shall remain in full force and effect until the entire Agreed Sum has been paid to [Nader & Sons]." It further stated that appellant's liability "shall be absolute, unconditional and irrevocable irrespective of . . . any modification, alteration, increase or reduction, limitation, impairment, extension or termination, in whole or in part, of the obligations of [N.Y. 18 and Beshmada], [appellant] or any other guarantor or surety for any reason, including any claim of waiver, release, surrender, alteration, reduction or compromise, and shall not be subject to (and the Guarantor hereby waives any right to or claim of) any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality, non-genuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, the obligations of [N.Y. 18 and Beshmada], [appellant], or any other guarantor or surety; or [¶] any other circumstance or event which might otherwise constitute a defense available to, or a legal or equitable discharge of, [NY 18 and Beshmada], [appellant], or any other guarantor or entity."[3]

---

this or any of the other multitudinous requests for judicial notice, though the trial court's minute order suggests that it considered all the materials presented. We note that respondents also cite the opinion in their appellate briefing; there is no dispute regarding its factual recitation or holding.

[3]     Appellant asserts that his guaranty also "clearly states that it is secured by the security for the loans/advances made to

3

In July 2008, the "Loan, Pledge and Security Agreement" was amended to increase the total loan amount to $12.5 million, and to add respondent Sisko Enterprises as an additional lender. The amended loan was secured by the Loan, Pledge and Security Agreement in addition to other collateral not relevant here. Appellant amended his personal guaranty to guarantee the increased loan amount of $12.5 million and add respondent Sisko Enterprises as an additional beneficiary. The provisions quoted above remained unchanged.

*Default and Bankruptcies*

Namco repaid only $6.7 million of the loan before entering bankruptcy in December 2008. Ezri also entered bankruptcy in December 2008, and Beshmada entered bankruptcy in 2009. N.Y. 18 did not file for bankruptcy, but Ezri surrendered control of the company to another individual for the purpose of winding up its affairs.

*Judgment Against Appellant*

While the bankruptcies were pending, respondents filed suit against appellant in New York to recover the outstanding

---

Namco." We disagree. The provision of the guaranty to which he points states: "WHEREAS, the holder of a Membership interest in N.Y. 18, LLC, a Delaware Limited Liability Co. which is the owner of a 35% membership interest in 127 West 25th LLC, a Delaware Limited Liability Co. which owns certain realty known as 127 West 25th Street, New York, NY and Owner is also a Member of Beshmada, LLC, a California Limited Liability Co. which is the owner of a 50% membership interest in 241 Fifth Ave. Hotel, LLC a Delaware Limited Liability Co. which owns certain realty known as 241 Fifth Ave., New York, NY (Collectively 'Owner') and Owner has pledged these membership interests as security for the repayment of the Agreed Sum in accordance with the terms of the Note . . . ."

4

loan balance of $5.8 million, plus interest.  The New York trial court entered judgment in favor of respondents and against appellant in the amount of $6,521,742.46 on October 21, 2009. Respondents domesticated the judgment in California on November 2, 2009 and began collection efforts shortly thereafter. To date, appellant has made two payments toward satisfaction of the judgment: a payment of $740,359.55, credited as $925,449.44 pursuant to the terms of a confidential agreement; and a payment of $1,738.

*Partial Settlement Agreement*

On January 18, 2010, respondents entered into a "Partial Settlement Agreement" with Namco's bankruptcy trustee, Ezri's bankruptcy trustee, N.Y. 18, and Beshmada.  Appellant was not a party to the Partial Settlement Agreement, though one of its recitals identified him as a party to and guarantor of the Loan, Pledge and Security Agreement.

The Partial Settlement Agreement acknowledged the existence of a $2.6 million promissory note dated August 7, 2008, made by Dan Shavolian and payable to N.Y. 18 (the Shavolian Note).  The Partial Settlement Agreement also noted then-pending New York litigation concerning whether the Shavolian Note was included as part of the collateral for the $12.5 million loan to Namco.  Despite the then-pending litigation, N.Y. 18 acknowledged that the collateral included its rights in the Shavolian Note, as well as all N.Y. 18's rights and remedies against Shavolian.  The Partial Settlement Agreement provided that N.Y. 18 "hereby assign[s], transfer[s] and convey[s]" to respondents "any and all right, title and interest. . . in and to the Collateral. . . ."  It also stated that N.Y. 18 had and delivered the

5

Shavolian Note to respondents and would endorse it at their direction.

Section 6.2 of the Partial Settlement Agreement gave respondents the exclusive right to collect or realize upon the collateral. It also provided that as respondents "receive[d] proceeds in good faith with respect to the Collateral, including the . . . Shavolian Note," respondents were to return 50 percent of those proceeds, up to $250,000, to N.Y. 18 and Beshmada. When the bankruptcy court approved the Partial Settlement Agreement in July 2010, it removed the latter portion of section 6.2: "the provision in the Agreement stating that [respondents] will pay Beshmada and NY 18 50% of the net proceeds [they] collect[ ] as a result of the collateral is removed, in exchange for a single immediate cash payment by [respondents] to Beshmada and NY 18, in the amount of $250,000."[4]

The above revision to section 6.2 was the only change the bankruptcy court made when it approved the Partial Settlement Agreement. It thus left intact section 7, "Effect of Partial Settlement Agreement on Claims," which we include here in full;

---

[4]    Respondents assert that the $250,000 was a payment "to acquire the Shavolian Note and Guaranty outright, rather than merely holding them as disputed pledged collateral for the Namco Loan. For this reason, Respondents never had to prove Namco's default of the Namco Loan in order to acquire the Shavolian Note and Guaranty through foreclosure on those instruments. That is, due to the Partial Settlement Agreement, the Shavolian Note and Guaranty no longer were only collateral for the Namco Loan. They also became assets owned outright by Respondents." Appellant disputes this assertion. We note that the New York trial court later concluded, in litigation between respondents and Shavolian, that the Partial Settlement Agreement gave respondents sole ownership of the Shavolian Note.

6

the portion we have underlined forms the basis of appellant's lead argument:

"No party is giving or receiving a release pursuant to this Agreement, and this Agreement represents a resolution of only the matters provided with respect to the Collateral. Nothing in this Agreement shall be construed as an admission by any of the parties herein of the merits of [respondents'] claims against the [Ezri] Namvar, Namco, or Beshmada estates, or of these estates' defenses to such claims. Moreover, nothing in this Agreement shall give rise to any claims by [respondents] against the [Ezri] Namvar, Namco, and/or Beshmada estates, including either prepetition claims or postpetition administrative claims.

"However, in determining any remaining claim by [respondents] against the bankruptcy estates in the Namco Bankruptcy Case, the Beshmada Bankruptcy Case and the [Ezri] Namvar Bankruptcy Case, <u>there shall be credited on a dollar for dollar basis the full amount of all proceeds received in good funds with respect to the Collateral</u>, whether received by [respondents] for [their] own account or as Retained Proceeds. For the avoidance of doubt, the parties acknowledge and agree that [respondents are] entitled to various costs and expenses pursuant to the Pledge Agreement and other Loan Documents and that [their] rights to such costs and expenses, including as against the bankruptcy estates in the Namco Bankruptcy Case, the Beshmada Bankruptcy Case and the [Ezri] Namvar Bankruptcy Case, are not limited by the $200,000 limitation provided in Section 6.2.3, which limitation applies only with regard to the determination of the Retained Proceeds. Further, and notwithstanding the credit to the bankruptcy estates in the Namco Bankruptcy Case, the Beshmada Bankruptcy Case and

7

the [Ezri] Namvar Bankruptcy Case, it is the intention of the parties that the retention of the Retained Proceeds as part of this partial settlement is an exclusion to the recoveries of [respondents] and shall not be counted for the benefit of any person liable to [respondents] other than the bankruptcy estates in the Namco Bankruptcy Case, the Beshmada Bankruptcy Case and the [Ezri] Namvar Bankruptcy Case."[5]

*Shavolian Judgments and Payments*

After they acquired the Shavolian Note, respondents filed suit against Shavolian in New York to recover thereon. The New York trial court entered judgment against Shavolian in the amount of $3,382,530.67, plus interest, on December 14, 2012; the judgment was affirmed on appeal. Contrary to appellant's assertions that no payments were made prior to April 2015, the appellate record shows that Shavolian made a $2 million payment toward the judgment on July 18, 2014. Shavolian satisfied the judgment in early 2016, after making a series of payments totaling over $4 million.

Respondents also obtained a judgment relating to the Shavolian Guaranty from the trial court in Orange County, California. The Fourth District Court of Appeal affirmed the judgment of $4,414,362.87, plus interest. (See *Nader & Sons LLC v. Shavolian* (Dec. 3, 2018, G055458) [nonpub. opn.].) Both parties represent that Shavolian has satisfied this judgment; though neither provides a record citation in support of its assertions, the record does indicate that Shavolian has satisfied the judgment.

---

[5] The Partial Settlement Agreement defined "Retained Proceeds" as the moneys respondents were supposed to pay back to N.Y. 18 and Beshmada under section 6.2.

*Renewal of the Judgment Against Appellant*

In April 2015, respondents filed an application for renewal of the domesticated judgment against appellant in California, pursuant to Code of Civil Procedure, sections 683.120 and 683.130.[6] They represented that, after appellant's payments were subtracted and interest and a filing fee were added, the judgment totaled $9,107,433.50. Appellant did not challenge the renewal application at the time and on appeal has expressly "waive[d] any argument as to the procedural problems brought on by Respondents' attempt to renew the judgment."

In July 2019, respondents sought to renew the original judgment against appellant in New York; after subtracting appellant's payments and adding interest, the judgment then totaled $10,915,258.88. Appellant opposed the effort. As relevant here, he argued that the judgment had been satisfied due to respondents' receipt of payments from Shavolian. Though the New York trial court made oral remarks suggesting it found appellant's argument persuasive, on June 3, 2020 it issued an order rejecting the argument and granting respondents' motion to renew the judgment in the amount requested. The order stated that the April 2015 renewal of the judgment in California was res judicata, such that appellant was not entitled to any additional credits for payments made prior to that date. It also stated that the "amounts recovered under the Shavolian note are irrelevant with respect to the loan [appellant] guaranteed"; that appellant was not entitled to credits for the amounts Shavolian paid to respondents; and that appellant's guaranty by its terms waived defenses and setoffs, rendering him ineligible for any credits in

_____

[6] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

9

any event.  The trial court's order was affirmed on appeal, and New York's highest court denied appellant's request for further review.[7]

On August 4, 2020, while his appeal of the New York judgment renewal was pending, appellant filed in Los Angeles Superior Court a motion to vacate respondents' 2015 renewal of the domesticated judgment.[8]  Appellant made the same argument he made in the New York proceedings:  respondents "have obtained the full amount of the balance of the judgment by levying and collecting on the security for the loan which payments were made by Dan Shavolian; [and appellant] is entitled to a[ ] 'dollar for dollar' offset for all payments made by Dan Shavolian pursuant to [the Partial Settlement Agreement]." In support of his motion, appellant filed the expert declaration of certified public accountant Jack Zuckerman.  Zuckerman furnished two opinions "using the assumptions counsel requested"—that the Shavolian payments were credited toward the judgment.  In his first opinion, Zuckerman opined that "the amount owing on the judgment as of today is a negative $(269,589.73).  In other words, [respondents] were overpaid $269,589.73 . . . ."  In his second opinion, which employed different assumptions, including a $2.5 million reduction of the originally domesticated judgment, Zuckerman opined that respondents had been overpaid by $4,672,387.73.

---

[7]    We granted respondents' request for judicial notice of these rulings.

[8]    Appellant concurrently filed a motion to strike the notice of renewal due to various alleged procedural irregularities.  As noted above, appellant expressly waived any appellate arguments related to the denial of that motion.  We accordingly do not discuss it further.

10

Respondents filed a written opposition to the motion on August 13, 2020. They argued that appellant's motion to vacate was untimely. They also argued that the New York court recently had rejected appellant's identical argument, and asserted that the superior court "should give full faith and credit to the New York court's ruling on the same issues now raised in Namvar's motions." Respondents did not provide a competing expert declaration. Appellant filed a reply on August 19, 2020, in which he contended that the New York ruling could not and should not be given preclusive effect.

On November 24, 2020, respondents filed another application for renewal of the domesticated judgment. The application and supporting documentation represented that continually accruing interest had increased the amount of the judgment to $14,232,598.76. Appellant filed a motion to vacate this renewal on January 19, 2021. This motion largely duplicated the arguments raised in appellant's initial motion to vacate, and further asserted that the New York ruling should not be awarded full faith and credit because it violated his due process rights.

The superior court heard both motions to vacate on March 30, 2021. No court reporter was present at the video hearing. After the hearing, the court issued a minute order stating the following; all errors and alterations appear in the original:

"The above-captioned motions are held and argued.

"Parties rest.

"The Court having fully considered the arguments of all parties, both written and oral, now rules as follows:

"Defendant and judgment debtor Tony [Homayoun] Namvar's Motion to Strike Notice of Renewal (filed 8-4-20) and

11

Motions to Vacate Renewal of Judgment' (filed on 8-4-20 and again on 1-19-21 are all DENIED.

"It appears the Defendants challenges to the renewed judgment based on a claim the judgment has been satisfied has been fully litigated in the New York action and rejected by that court. Moreover, this court finds Defendant has failed to show in this action that the judgment was satisfied in any way by Plaintiff's liquidation of any collateral securing any loan or otherwise obtained under any settlement agreement, or that defendant is otherwise entitled to any credits toward the judgment. Finally, the court finds defendants remaining procedural objections and challenges to the renewal of the judgment lack merit.

"Plaintiff is to submit a proposed order."

The court entered an order denying appellant's motions on May 21, 2021. That order stated, in relevant part:

"2. After considering the Motion to Strike, the First Motion to Vacate, and the Second Motion to Vacate on their merits, the Court denies all three Motions on the ground that Namvar has not met his burden of proof as to any those [*sic*] Motions.

"3. The Court declines to deny any of the three Motions on grounds that they were filed late.

"4. The Court also declines to rule on the binding effect of the Judgment Creditors' judgment in New York against Namvar and the orders of the New York court issuing that judgment."

Appellant timely appealed. (See *Jonathan Neil & Associates, Inc. v. Jones* (2006) 138 Cal.App.4th 1481, 1483 ["the

12

order denying the motion to vacate is appealable as an order after judgment"] (*Jonathan Neil*).)

## DISCUSSION

*Applicable Legal Principles*

"Code of Civil Procedure section 683.020, which defines the period for enforceability of judgments, provides after the expiration of 10 years after the date of entry of a money judgment . . . the judgment may not be enforced. One way to preserve such a judgment is to file an application for renewal under the terms of Code of Civil Procedure sections 683.120 and 683.180 *before* the expiration of the 10-year enforceability period. Such application automatically renews the judgment for period of 10 years." (*Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 372, emphasis in original.) "[R]enewal does not create a new judgment or modify the present judgment. Renewal merely extends the enforceability of the judgment." (*Jonathan Neil*, *supra*, 138 Cal.App.4th at p. 1489.) "The accrual of interest and the possibility of an award of costs and fees are, however, inherent in the original judgment; that is, they augment the judgment by operation of law." (*Ibid.*)

Section 683.170 provides a vehicle for a judgment debtor to vacate the renewal of a judgment "on any ground that would be a defense to an action on the judgment, including the ground that the amount of the renewed judgment as entered pursuant to this article is incorrect. . . ." (§ 683.170, subd. (a).) The trial court may order the renewal vacated "upon any ground provided in subdivision (a), and another and different renewal may be entered, including, but not limited to, the renewal of the judgment in a different amount if the decision of the court is that

13

the judgment creditor is entitled to renewal in a different amount." (*Id.*, subd. (c).)

*Standard of Review*

Appellant asserts that we should apply a de novo standard of review because the court concluded that he failed to meet his burden of proof. In support of this assertion, he cites *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116, a summary judgment case which states, "On appeal, we review the record de novo to determine whether the moving party met its burden of proof." He also cites *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1157, a dependency case which states, "Allocation of the burden of proof presents an issue of statutory construction subject to de novo review."

These authorities are not on point. It is well-settled that appellant, the movant, "bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under section 683.170." (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 199 (*Fidelity*); see also *Rubin v. Ross* (2021) 65 Cal.App.5th 153, 161 (*Rubin*) [same], *American Contractors Indemnity Co. v. Hernandez* (2022) 73 Cal.App.5th 845, 848 (*American Contractors*) [same].) Appellant asserts that respondents, who are the plaintiffs in the underlying collection action, "have the burden to prove their unlawful act in seeking to double recover is legal." The general rule, however, is that the party seeking relief bears the burden of proof. (Evid. Code, § 500.) Appellant has not demonstrated that rule is inapplicable here.

It is equally well-settled that we review the court's ruling on a motion to vacate for abuse of discretion. (*Fidelity*, *supra*, 89 Cal.App.4th at p. 199; *Rubin*, *supra*, 65 Cal.App.5th at p. 161;

14

*American Contractors*, *supra*, 73 Cal.App.5th at p. 848.) Under that standard, "we examine the evidence in a light most favorable to the order under review" (*Fidelity*, *supra*, 89 Cal.App.4th at p. 199), and "defer to the trial court's resolution of factual conflicts in the evidence." (*American Contractors*, *supra*, 73 Cal.App.5th at p. 848.) However, the abuse of discretion standard does not permit trial courts to apply incorrect rules of law; to the extent the trial court resolved any questions of law, we apply de novo review. (*Rubin*, *supra*, 65 Cal.App.5th at pp. 161-162.)

*Analysis*

Appellant contends he met his burden of proof "to show that he was entitled to credits from the sale of the security for the loan he guaranteed against the judgment." He asserts that he "presented sufficient evidence to shift the burden to Respondents," including "the original obligation and the security for it," "his guaranty which incorporated the security for the guaranty," "the bankruptcy court order and the California Court of Appeal decision," "Respondents' satisfactions of judgment," and the uncontroverted expert testimony of Zuckerman.

The trial court did not abuse its discretion in concluding otherwise. Appellant relies on the "dollar for dollar" language in the Partial Settlement Agreement to argue that Shavolian's payments toward Shavolian's judgments reduced the amount appellant owed on appellant's judgment. This argument lacks merit. The provision states that "in determining any remaining claim by [respondents] against the bankruptcy estates in the Namco Bankruptcy Case, the Beshmada Bankruptcy Case and the [Ezri] Namvar Bankruptcy Case, there shall be credited on a dollar for dollar basis the full amount of all proceeds received in good funds with respect to the Collateral, whether received by

15

[respondents] for [their] own account or as Retained Proceeds." By its plain terms, this provision extends dollar for dollar credit for proceeds received to the Namco, Beshmada, and Ezri Namvar bankruptcy estates. Appellant is not included within the ambit of this provision.

Nor was appellant a party to the Partial Settlement Agreement in any event. He contends that the document's reference to him as a guarantor of the Loan, Pledge and Security Agreement "deemed" him either a party to or beneficiary of the Partial Settlement Agreement. As further support for this position, he points to a footnote in the motion seeking bankruptcy court approval of the Partial Settlement Agreement that mentioned him in the same capacity, as well as a declaration accompanying that motion referencing appellant as an unnamed personal guarantor of the $12.5 million loan. It is unclear how these mentions of appellant would render him a party to or beneficiary of the Partial Settlement Agreement, or how either status would supersede the plain language of section 7. Moreover, even if appellant were entitled to dollar-for-dollar credit for payments made by Shavolian, there is no evidence those payments were sufficient to cover the still-growing judgment against appellant, which now exceeds $14 million, or that the "absolute, unconditional and irrevocable" nature of appellant's guaranty, and its explicit waiver of "any defense or setoff," would permit him to seek it. Even to the extent contract interpretation poses a question of law (see *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125-1126), appellant bore the burden of supporting his interpretation. He did not do so here; the trial court accordingly did not abuse its discretion in rejecting his arguments and denying his motions.

16

Appellant also points out that respondents did not provide any expert testimony to counter Zuckerman's opinions. Respondents did not bear the burden of proof. Moreover, the weight to accord to expert testimony is a factual question for the court, and we "defer to the trial court's resolution of factual conflicts in the evidence." (*American Contractors, supra*, 73 Cal.App.5th at p. 848.)  Zuckerman's testimony was predicated entirely on the fundamentally flawed premise that appellant was entitled to dollar-for-dollar credit for payments made by Shavolian; the trial court did not abuse its discretion in apparently rejecting it.

Appellant alternatively argues that the New York order renewing the judgment should not be binding on this court, and the full faith and credit clause of the federal Constitution does not apply to this case.  The trial court's order expressly states that the court "declines to rule on the binding effect of the Judgment Creditors' judgment in New York against Namvar and the orders of the New York court issuing that judgment."  We too decline to address whether the New York order is binding in this forum.  The trial court independently evaluated the merits and concluded that appellant did not meet his burden of proof as to any of his motions, a conclusion consistent with that of the New York court.  Because appellant has not demonstrated that the trial court erred in that analysis or otherwise abused its discretion, no further discussion is necessary.

17

## DISPOSITION

The order is affirmed.  Respondents are awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.