Filed 8/21/25  In re Jade R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Jade R., a Person Coming Under the Juvenile Court Law. | B340611 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>B.H.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 23CCJP02453A) |

APPEAL from orders of the Superior Court of Los Angeles County.  Mark A. Davis, Judge.  Reversed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Respondent J.R.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Minor.

## INTRODUCTION

B.H. (Mother) appeals from the trial court's order terminating jurisdiction over her oldest daughter Jade R., who was 14 years old when the court closed the case. Jade suffered emotional abuse, physical abuse, and sexual abuse for which the trial court asserted jurisdiction. As a dependent under court supervision, three months before the hearing, Jade attempted to commit suicide by overdosing on her psychotropic medication after which she was diagnosed with major depressive disorder. Thereafter, Jade refused mental health treatment consistent with the views of her stepmother, who was Jade's caregiver, and her father. Here, the court erred by terminating jurisdiction as the uncontradicted evidence was that Jade was at risk of harm given her recent suicide attempt. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Dependency proceedings

While Mother's two daughters came under dependency jurisdiction, only Jade is the subject of this appeal. On July 25, 2023, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition requesting that the trial court take jurisdiction over Jade, then 13 years old, and Jade's younger sister, Ayda E., then two years old. DCFS alleged that Mother physically and emotionally abused Jade, and that Ayda was also at risk of harm. Jade and Ayda have different fathers.

After the trial court granted an emergency removal order, Jade was placed in foster care, and Ayda was placed with her father. When DCFS filed its detention report, J.R., Jade's father (Father), could not be found. At the detention hearing, the trial court detained Jade from Mother, and placed Jade under DCFS's care. The trial court ordered no visitation for Father until he

2

made himself available to DCFS. DCFS later located Father, who resided in Mexico.

On July 27, 2023, Jade was placed with a maternal aunt, and DCFS soon explored other options as the placement was not successful. On August 7, 2023, the trial court ordered that Jade be released to Father conditioned on Jade remaining in the United States. Thus, Father planned for Jade to live with a different maternal aunt from the one with which Jade was initially placed, and Jade resided with this maternal aunt.

On August 24, 2023, DCFS amended its petition to add multiple allegations. DCFS newly alleged that Mother's abuse of marijuana placed both children at risk. DCFS further alleged that Mother's mental health concerns, and Ayda's father's alcohol abuse placed both children at risk. In addition, DCFS alleged that Mother neglected Jade's mental health, which placed both children at risk. DCFS also alleged Mother emotionally abused Jade. Finally, DCFS alleged that Ayda's father sexually abused Jade, which placed both children at risk. DCFS also alleged that Mother failed to protect Jade from sexual abuse, placing both daughters at risk.

On February 13, 2024, the trial court found that Mother physically abused Jade, emotionally abused Jade, and failed to protect Jade from her stepfather's sexual abuse. The trial court also found that Ayda was at risk of harm based on the physical abuse and sexual abuse that Jade suffered. Based on these findings, the trial court asserted jurisdiction. At the dispositional hearing, the trial court removed Jade from Mother and placed Jade with Father who established a plan for Jade to be in the home of Jade's stepmother, Father's wife. Jade moved out of her maternal aunt's home in early February 2024, and had been

3

residing with her stepmother for one week prior to the dispositional hearing.

At the dispositional hearing, the trial court ordered that Mother was to have monitored visits with Jade in a neutral setting for nine hours per week. However, at the outset of the case after the emergency removal, Jade declined visits with Mother and said she was not interested in living with Mother even if Mother went to therapy.

During the assessment period after the court asserted jurisdiction, Jade resided with her stepmother. Jade was initially in mental health services and worked on communication, relationships, safety, symptoms of anxiety, defiant behavior, and substance abuse. Jade's mental health team included a facilitator, therapist, parent partner, and child family specialist. Jade, however, stopped taking her prescribed psychotropic medication when she began living with her stepmother. Jade said she declined to take her psychotropic medication because she was worried about mixing the medication with marijuana, and she had already been using marijuana.

In May of 2024, Jade took 20 prescribed pills, and she was hospitalized for attempting to commit suicide. At that point, she was diagnosed with major depressive disorder. After the hospital discharged Jade, her mental healthcare providers had difficulty providing her care. She had only two sessions with her therapist and no sessions with her behavioral counselor because Jade canceled further sessions.

During Jade's hospitalization, Mother attempted to visit her, but Jade elected to postpone the visit until after she left the hospital. When DCFS attempted to schedule a visit after a few weeks, Mother declined, expressing concerns about her safety.

According to Mother, Jade passed by Mother's home in a car with others, and people in the car gave her and Ayda's father the middle finger.

About one year before the May 2024 hospitalization, Jade previously attempted to overdose, and she was treated for depression then as well. Thus, her May 2024 overdose was her second attempt to take excessive medication to harm herself.

In mid-July 2024, during a planning session with DCFS, Jade's stepmother explained that the family wanted to pause services. In a later meeting, Jade stated that she needed a break from services. Thereafter, Father said that Jade should not be taking psychotropic medication. After receiving information from Jade, Father, and Jade's stepmother, Jade's healthcare providers terminated services based on Jade's disinterest. Nonetheless, Jade expressed an openness to exploring psychotropic medication, and her mental health team gave Jade's stepmother a letter to take to Jade's primary doctor. At the time that the report was finalized, Jade had not yet seen her primary doctor.

In its report, DCFS expressed concern that Jade's mental health symptoms were being minimized. DCFS also concluded that Jade was at high risk of hurting herself if she was not under the supervision of a psychiatrist.

On August 12, 2024, the trial court presided over a review hearing under Welfare and Institutions Code[1] section 364. Jade's counsel asked the trial court to terminate jurisdiction over Jade; Mother argued Jade's case should remain open; Father argued to close the case; and DCFS argued to keep the case open.

---

[1]    All further statutory citations are to the Welfare and Institutions Code.

5

The trial court ruled, "The court believes it's in the best interest of Jade to close the case. She is unwilling to take medication. Father doesn't want her to take it. Apparently per minor's counsel, it is just a constant reminder of what happened to her, and it's been almost a year since this case originated. I think longer than a year. . . . and we made as much progress as we are going to make. [¶] Jade seems to be safely in the care of her father."

On August 27, 2024, the trial court terminated jurisdiction over Jade.

On September 11, 2024, Mother appealed from the juvenile court order terminating jurisdiction over Jade.

## DISCUSSION

### 1.     The parties and legal standard

Mother contends the trial court erred in terminating jurisdiction. While DCFS argued for continued jurisdiction below, it takes no position on this appeal. Jade and Father are respondents who argue in favor of the trial court's ruling terminating jurisdiction.

While the parties all agree that some level of deferential review of the trial court ruling is appropriate, each of the parties urges different legal standards. Mother argues abuse of discretion applies, Jade argues for substantial evidence, and Father argues appellant must point to evidence compelling a result in her favor. We agree with Father on the legal standard.

When, as here, a trial court asserts jurisdiction over a child and places a child in a parent's custody, the trial court conducts review hearings under section 364. Under this section, "the court shall terminate its jurisdiction unless the [social services agency] . . . establishes by a preponderance of evidence that the

6

conditions still exist which would justify initial assumption of jurisdiction . . . or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).) While section 364 specifies that the social services agency has the burden of proof to establish a basis for continuing jurisdiction, any party arguing for jurisdiction has that same burden. (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1157.) "[B]ecause section 364(c) would have required the juvenile court to terminate dependency jurisdiction in the absence of proof of conditions justifying assumption of jurisdiction, the burden of proof was on [appellant], because [the appellant must] establish the existence of those conditions." (*Ibid.* [applying this rule to minors arguing to extend jurisdiction].) When a trial court rejects a parent's argument to extend dependency jurisdiction at a hearing under section 364, subdivision (c), we conclude that the trial court found that the parent failed to carry her evidentiary burden. (*In re J.M.* (2023) 89 Cal.App.5th 95, 111, review den. June 14, 2023.) Consequently, we evaluate "whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–28, overruled in part on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010.) Mother can only carry her burden by establishing that the evidence below was both (1) " 'uncontradicted and unimpeached' " and of (2) " 'a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*Ibid.*)

2. **The evidence compels a finding that ongoing jurisdiction was proper**

Here, the juvenile court asserted jurisdiction over Jade because it found that Mother physically and emotionally abused

Jade and failed to protect Jade from sexual abuse. In making its finding that Jade was emotionally abused, the trial court necessarily found that the emotional abuse was "evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others." (§300, subd. (c).) As a result, since the outset of the case, Jade's mental health was a central concern for the court. Mother argues that the facts compel a finding in her favor because Jade's mental health presented an uncontroverted basis for continuing jurisdiction. We agree.

Our colleagues in Division Four affirmed an order terminating jurisdiction in a case where a child suffered emotional abuse, among other bases for jurisdiction. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 111, review den.) *J.M.* provides a useful reference point for our analysis. There, the trial court found true allegations that a daughter's " 'mental health declined due to the family dynamics.' " She "stopped attending school . . . due to severe anxiety." She went to the emergency room for "not eating, not engaging with anyone, and was locking herself in her room." (*Id*. at p. 104.) The record also established that this child contemplated self-harm, and her therapist concluded she was severely depressed. (*Id*. at pp. 102, 104.) As the case progressed, this child and her siblings lived with the mother while staying with the father on some weekends. (*Id*. at p. 107.) Thereafter, the court terminated jurisdiction. (*Id*. at pp. 110–111.) In appealing the trial court's decision to terminate jurisdiction regarding this daughter, the father raised his daughter's mental health as a reason to continue jurisdiction. (*Id*. at p. 111.) In affirming the trial court ruling, Division Four noted, "While [this daughter's] issues with anxiety and depression were not fully resolved, she was regularly attending individual therapy as

8

well as conjoint therapy with mother, was taking medication, and mother was committed to ensuring her continued care." (*Ibid.*)

The underlying facts regarding the child's mental health in *J.M.* differ significantly and materially from the case before us. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 111, review den.) Here, Jade was not in therapy and was not taking medication. In addition, unlike the mother in *J.M.*, both Jade's caregiver and Father discouraged her from accessing mental health services. (*Ibid.*) Moreover, when the trial court terminated jurisdiction here, Jade had recently attempted suicide, so her mental health posed a serious risk to her well-being.

Further, Jade's mental stability was a basis for jurisdiction based on the emotional abuse finding, and the record was devoid of any evidence that Jade's mental health had improved. If anything, Jade appeared to need significant mental health support at the time when the court terminated jurisdiction. Thus, the evidence compelled a finding that "the conditions still exist which would justify initial assumption of jurisdiction." (§364, subd. (c).)

While *J.M.* provides helpful guidance, we note that there the court found that the facts did not compel a finding in the parent's favor. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 111, review den.) In reaching the opposite conclusion here, we do not suggest that a trial court's order terminating jurisdiction will only be affirmed where a child's emotional health is as conclusively addressed as was the case in *J.M.* (*Ibid.*) Instead, we find in favor of Mother here because Jade faced significant, unusually serious risks to her health when jurisdiction was terminated, and no contrary evidence existed.

Further, consistent with the thrust of Mother's primary argument, we also find that continuing jurisdiction is consistent with Jade's best interests because of the serious health risks here. We understand that the trial court and DCFS may have challenges in encouraging Jade to take part in mental health services, but she at least expressed an openness to potentially restarting psychotropic medication. At a minimum, the trial court should ensure that all options have been exhausted to re-engage Jade in services with the goal of addressing her mental health before considering terminating jurisdiction.

Finally, Mother also argues court supervision is required because of her frayed relationship with Jade. However, the trial court ameliorated any risk Mother posed to Jade by allowing Father to create a plan for Jade to live with her stepmother. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 111, review den. [noncustodial father's deteriorating relation with child did not support continued jurisdiction].) Thus, this argument is not a basis for our ruling.

In summary, Mother has carried her heavy burden, and we find the court erred in terminating jurisdiction.

## DISPOSITION

The order terminating jurisdiction over Jade is reversed. The trial court is to reinstate jurisdiction over Jade.

VIRAMONTES, J.

WE CONCUR:

WILEY, Acting P. J.

RUBIN, J.*

---

* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11